**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| TERI NOTORANGELO, | ) |
| | ) |
|        Plaintiff, | ) |
| | ) |
|     vs. | )     No. 4:07CV570-DJS |
| | ) |
| FEDERAL EXPRESS CORPORATION, | ) |
| | ) |
|     Defendant. | ) |

## ORDER

On February 20, 2007, plaintiff Teri Notorangelo filed a petition in the Circuit Court of St. Louis County, Missouri, asserting claims of age and gender discrimination pursuant to the Missouri Human Rights Act ("MHRA"), Mo. Rev. Stat. § 213.010 et seq. Plaintiff alleges that her employer, defendant Federal Express Corporation ("FedEx"), gave preferential treatment to younger and male employees, and terminated plaintiff because of her age and gender. On March 22, 2006, pursuant to federal diversity jurisdiction, the action was removed to this Court by defendant. Now before the Court is defendant's motion for summary judgment [Doc. #27]. The matter has been fully briefed and is ready for disposition.

## Jurisdiction

It is always the duty of a federal court to examine its own jurisdiction over a matter, and address any subject matter jurisdiction defects that might arise. See, e.g., Wis. Dept. of

Corr. v. Schacht, 524 U.S. 381, 382 (1998) ("No court can ignore the defect; rather a court, noticing the defect, must raise the matter on its own.").  Plaintiff does not assert any federal claims; rather, she asserts only state-law claims under the MHRA. Nevertheless, she avers in her petition that she is a resident of Missouri, and defendant avers in its notice of removal that it is a Delaware corporation with its principal place of business in Tennessee.  Further, defendant avers that, in seeking an award for full wages and benefits, the amount in controversy in this matter exceeds $75,000.00.  Twenty-eight U.S.C. § 1332(a) provides federal jurisdiction in cases where the amount in controversy is greater than $75,000 and complete diversity of citizenship among the litigants exists.  See 28 U.S.C. § 1332(a).  Accordingly, the Court finds that it does have diversity jurisdiction pursuant to 28 U.S.C. § 1332(a).

### Standard of Review

In considering a motion for summary judgment, the Court must "view all of the evidence in the light most favorable to the nonmoving party and [will] give that party the benefit of all reasonable inferences to be drawn from the facts disclosed in the pleadings."  Reich v. ConAgra, Inc., 987 F.2d 1357, 1359 (8th Cir. 1993).  "Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law."  Id.  "Although the moving party has the

burden of demonstrating the absence of genuine issues of material fact, the 'nonmoving party may not rest upon mere denials or allegations, but must instead set forth specific facts sufficient to raise a genuine issue for trial.'" Burchett v. Target Corp., 340 F.3d 510, 516 (8th Cir. 2003) (quoting Rose-Maston v. NME Hosps., Inc., 133 F.3d 1104, 1107 (8th Cir. 1998)).

In ruling on a motion for summary judgment, "a District Court must resolve any factual issues of controversy in favor of the non-moving party only in the sense that, where the facts specifically averred by that party contradict facts specifically averred by the movant, the motion must be denied. That is a world apart from 'assuming' that general averments embrace the 'specific facts' needed to sustain the complaint." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990). Consequently, in order to withstand a motion for summary judgment, evidence submitted by a non-movant must contain specific facts, and general statements will not be supplemented by a court's assumptions.

> It will not do to "presume" the missing facts because without them the affidavits would not establish the injury that they generally allege. That converts the operation of Rule 56 to a circular promenade: plaintiff's complaint makes general allegation of injury; defendant contests through Rule 56 existence of specific facts to support injury; plaintiff responds with affidavit containing general allegation of injury, which must be deemed to constitute averment of requisite specific facts since otherwise allegation of injury would be unsupported (which is precisely what defendant claims it is).

3

Id. at 889; see also Stanback v. Best Diversified Prods., Inc., 180 F.3d 903, 909 (8th Cir. 1999) ("[G]eneral statements in affidavits and deposition testimony...are insufficient to withstand a properly-supported motion for summary judgment.") (citations omitted); Allen v. Entergy Corp., 181 F.3d 902, 905 (8th Cir. 1999) ("[Plaintiff's] conclusory affidavit 'is devoid of any specific factual allegations'...and as such, it cannot withstand a properly supported summary judgment motion.") (quoting Flannery v. Trans World Airlines, Inc., 160 F.3d 425, 428 (8th Cir. 1998)).

## Background

**Undisputed Facts**

For purposes of this motion, the Court finds that the following facts are not in dispute, or have not been specifically controverted pursuant to E.D.Mo. L.R. 7-4.01(E).[1] Plaintiff began working for defendant in January of 1985. At some point during her employment with defendant, plaintiff was assigned to work as a ramp transport driver in Berkeley, Missouri, and was working in such a capacity at all times relevant to this action. A ramp transport driver delivers packages between FedEx stations. Ramp transport drivers drive tractor-trailer trucks carrying canisters (called "ULDs") filled with packages. The ULDs are large containers which are heavy and which require two or more employees to load onto a

---

[1] "All matters set forth in the statement of the movant shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party." E.D.Mo. L.R. 7-4.01(E).

trailer.  Employees known as handlers are responsible for loading the trucks with the ULDs assigned to the ramp transport driver's route for that day.  The ramp transport driver is responsible for verifying that the ULDs on the truck are those which are listed on the manifest for the route.  The ramp transport driver checks the ULDs against the manifest and then turns in paperwork to the team leader.  The ramp transport driver is responsible for ensuring that her load is secured and then is to safely exit the loading ramp.

On October 18, 2004, plaintiff was involved in an incident.  A letter of warning, dated October 20, 2004, was issued to plaintiff by defendant, in which it is stated that the incident was caused by plaintiff's failure to ensure that her trailer was completely offloaded before exiting a dock door, and resulted in two improperly secured ULDs dropping off the rear of the trailer to the ground.  The letter stated that defendant deemed the incident a serious safety violation which could have resulted in serious injury.  Doc. #29-3, p. 30.

Approximately nine months later, on July 15, 2005, plaintiff pulled away from the ramp while a ULD was still being loaded onto her truck.  Two handlers, Eric Martin and Dave Garner, were in the process of pushing a ULD onto the back of her trailer when she pulled away.  As plaintiff pulled away, Martin fell to the ground and the ULD was left hanging between the dock and the trailer.  Martin suffered a knee injury and missed several days of work.

5

Plaintiff was placed on an unpaid suspension pending an investigation into the event. As part of the investigation, Martin and Garner wrote statements in which they stated plaintiff failed to sound her horn prior to driving away from the dock. Plaintiff was found by defendant, among other violations, to have failed to verify visually her load, failed to ensure no person was in the vehicle prior to leaving the facility, and failed to blow her horn to notify employees that the trailer would be moving. Defendant deemed the incident a gross safety violation, her second within a twelve-month period. On July 15, 2005, plaintiff was terminated from her employment with defendant.

Defendant's employment manual states that, if an employee violates defendant's employment policy, management may return the employee to work and issue a warning letter as a means of discipline. Three notifications of deficiency within a twelve-month period normally result in termination. When an employee receives a second warning letter within a twelve-month period, that second notification must advise the employee that termination may occur if a third notification is received within a twelve-month period, regardless of the type of third violation. Nevertheless,

> [b]ased on the severity of the occurrence, an employee may be terminated with less than three notifications of deficiency within a 12-month period. Management is responsible for thoroughly reviewing an employee's disciplinary record with [defendant] and exercising judgment in determining appropriate action.

Doc. #29-2, p. 23.  Further, pursuant to defendant's policy, all disciplinary actions normally should be initiated within seven calendar days of the conclusion of the investigation.  Id.

**Disputed Facts**

Plaintiff states that she was assigned to the evening shift the night before the incident leading to her termination, and that she was called three times at home by defendant questioning whether she was scheduled to work that night shift.  Plaintiff states these several calls deprived her of the sleep she needed to drive the upcoming night route.  Plaintiff states that on the night of the incident she was assigned to use truck #302436, which was a truck in serious disrepair.  Further, plaintiff states that she did compare the ULDs on the trailer with her manifest list, and that her team leader stated she was ready to go.  Plaintiff also maintains that she did sound her horn before she pulled away, and that load handlers are not to enter a moving trailer.  Plaintiff specifically disputes the accuracy of Martin and Garner's accident reports, and states that these employees' accounts of the incident were accepted over plaintiff's account of the incident.[2]  Plaintiff disputes defendant's decision to classify the July 15, 2005, incident as a serious incident, and states that there is no definition of what a serious safety violation entails.

---

[2]In an attempt to impeach Martin and Garner's incident accounts, plaintiff states that Martin and Garner wrote their incident accounts within minutes of each other and in each other's presence, and that such accounts are almost identical.

Plaintiff states that she actively participated in safety meetings, was safety conscious, and had received safe-driving awards. Plaintiff states that the "sounding-the-horn" system currently used to warm employees that a trailer is prepared for departure should be replaced by a safer warning mechanism, one in which cones, flags, and chains are utilized. Plaintiff states this alternative system would have prevented the incident that led to her termination.

When asked whether any derogatory gender-based comments were made to her, plaintiff stated in her deposition that she "would imagine there has been over the years." Doc. #29-3, p. 21. However, she stated that there were no events that she could recall with specificity. Plaintiff admitted that no age-related comments were made.

Plaintiff also represents the safety record of several male employees. She states that Chris Kaemmerer, a male driver, has been involved in at least six serious incidents in a three-year period, including getting a speeding ticket while on duty, failure to check and secure his load, tardiness, and getting into an accident. Further, she states that other male drivers and those under forty were allowed to have a number of incidents, including Ed Anth, who had three DWIs. Additionally, plaintiff states that Jerry Jinkerson, a male, "was know [sic.] to have numerous incident [sic.] which were not reported." Doc. #31, p. 18. Plaintiff states "[s]everal males were known by management to be sleeping on

the job." Id. Plaintiff states that Mike McCawley, a male, received a warning letter for driving away from the dock with two employees still in the back of the truck, but was not terminated. Finally, plaintiff states that Robert Stark, a co-employee, stated that once, while he was working as a handler, the trailer in which he was working started moving with him still in it. When asked if, to his knowledge, the male driver of that trailer was written up or otherwise reprimanded, Stark testified that the driver was not.

**Discussion**

**Terms and Conditions of Employment**

To initiate a claim under the MHRA a party must "timely file an administrative complaint with [the Missouri Commission on Human Rights (MCHR)] and either adjudicate the claim through the MCHR or obtain a right-to-sue letter." Stuart v. Gen. Motors Corp., 217 F.3d 621, 630-31 (8th Cir. 2000) (citing Mo. Rev. Stat. § 213.111). Exhaustion of administrative remedies entitling a claimant to bring a cause of action under the MHRA "requires a claimant to give notice of all claims of discrimination in the administrative complaint." Id. Where this procedure is done, the exhaustion requirement is satisfied for the allegations asserted in the administrative charge, as well as for allegations "like or reasonably related to" those asserted in the administrative charge. Shannon v. Ford Motor Co., 72 F.3d 678, 684 (8th Cir. 1996).

In this case, plaintiff's MCHR charge of discrimination, filed November 18, 2005, stated that she believed she was "<u>terminated</u> because of [her] sex." Doc. #29-3, p. 34. Further, when stating the bases for discrimination, she checked boxes for both "age" and "sex." The charge of discrimination contained no reference to any incident of preferential treatment in hiring, rehiring, shift allocation, promotions, pay increases, training opportunities, or discipline (other than plaintiff's termination). Like the Eighth Circuit in <u>Tart v. Hill Behan Lumber Co.</u>, 31 F.3d 668, 672-73 (8th Cir. 1994), this Court concludes that plaintiff's claims of unlawful preferential treatment are <u>not</u> sufficiently like or related to her unlawful discharge claim, and the former charges will not be deemed exhausted by the charge she filed. Plaintiff's single specific assertion of discriminatory termination is entirely "separate in time and distinct in kind from" the unlawful preferential treatment allegations. <u>Tart</u>, 31 F.3d at 673. Because plaintiff has not administratively exhausted the unlawful preferential treatment allegations, defendant is entitled to summary judgment on such claims.


**<u>Wrongful Discharge</u>**

Plaintiff alleges in her petition that she is a forty-five year old female, and that, due to her age and gender, she was

10

wrongfully terminated from her employment with defendant. Defendant, however, argues that plaintiff has not produced sufficient evidence to withstand its motion for summary judgment.

Missouri law controls this diversity case. Kunferman v. Ford Motor Co., 112 F.3d 962, 965 (8th Cir. 1997). The MHRA prohibits any employer from discriminating against any individual "with respect to h[er] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, national origin, sex, ancestry, age or disability...." Mo. Rev. Stat. § 213.055.1(1)(a). The standards for claims brought pursuant to the MHRA, while similar to federal standards, "are not identical to the federal standards and can offer greater discrimination protection." Daugherty v. City of Maryland Heights, 231 S.W.3d 814, 819 (Mo. 2007); see also Korando v. Mallinckrodt, Inc., 239 S.W.3d 647, 649 (Mo. App. 2007) (stating that "the Missouri Supreme Court recently determined the McDonnell Douglas [Corp. v. Green, 411 U.S. 792 (1973)] burden shifting analysis no longer applies" to actions brought under the MHRA). "If the wording in the MHRA is clear and unambiguous, then federal caselaw which is contrary to the plain meaning of the MHRA is not binding." Daugherty, 231 S.W.3d at 819 (quoting Brady v. Curators of Univ. of Mo., 213 S.W.3d 101, 112-13 (Mo. App. 2006)). Nevertheless, when analyzing an employment discrimination case under the MHRA, courts are still guided "not only by Missouri law, but also federal employment discrimination cases," and federal caselaw is

11

instructive when such caselaw is not contrary to the plain meaning

of the MHRA.  <u>Cooper v. Albacore Holdings, Inc.</u>, 204 S.W.3d 238,242

(Mo. App. 2006).

In interpreting the MHRA, the Missouri Supreme Court

stated:

> The MHRA defines "discrimination" to include
> "<u>any</u> unfair treatment based on race, color,
> religion, national origin, ancestry, sex, age as
> it relates to employment, disability, or familial
> status as it relates to housing."  Nothing in
> this statutory language of the MHRA requires a
> plaintiff to prove that discrimination was a
> substantial or determining factor in an
> employment decision; if consideration of age,
> disability, or other protected characteristics
> contributed to the unfair treatment, that is
> sufficient.

<u>Daugherty</u>, 231 S.W.3d at 819 (emphasis in original) (quoting Mo.

Rev. Stat. § 213.010(5)).  When determining whether an MHRA claim

"survives summary judgment, 'a plaintiff has no higher standard to

survive summary judgment than is required to submit a claim to a

jury.'" <u>Lomax v. DaimlerChrysler Corp.</u>, 243 S.W.3d 474, 479 (Mo.

App. 2007) (quoting <u>Daugherty</u>, 231 S.W.3d at 820).  The Missouri

jury instructions set forth the factors for submission of an MHRA

claim to a jury as follows:

> First, defendant...discharged...plaintiff, and
>
> Second...one or more of the protected
> classifications supported by the evidence such as
> race...<u>was a contributing factor</u> in
> such...discharge..., and
>
> Third, as a direct result of such conduct,
> plaintiff sustained damage.

MAI 31.24 (6th ed. supp. 2007) (emphasis added).  Accordingly, a plaintiff's claim brought under the MHRA will survive summary judgment if there is a genuine issue of material fact as to whether her age or gender <u>was a contributing factor</u> in the defendant's termination decision, and it is incumbent upon the Court to "determine whether the record shows two plausible, but contradictory, accounts of the essential facts and the 'genuine issue' in the case is real, not merely argumentative, imaginary, or frivolous."  <u>Daugherty</u>, 231 S.W.3d at 820.

Quarreling with the soundness of a business's judgment in selecting an employee for termination, without more, is not evidence of discrimination.  <u>Davenport v. Riverview Gardens Sch. Dist.</u>, 30 F.3d 940, 945 (8th Cir. 1994).  Disputes concerning the seriousness of various incidents "merely question[] the soundness of [a] defendant's judgment."  <u>Id.</u>  An employer may develop arbitrary, ridiculous, and even irrational policies so long as they are applied in a non-discriminatory manner, and discrimination claims do not require or authorize a court to engage in examination of the wisdom of an employer's judgment in personnel matters.  <u>See, e.g.,</u> <u>McLaughlin v. Esselte Pendaflex Corp.</u>, 50 F.3d 507, 512 (8th Cir. 1995); <u>Smith v. Monsanto Chem. Co.</u>, 770 F.2d 719, 723 n.3 (8th Cir. 1985).  Employment discrimination laws prohibit "intentional discrimination based on certain, discrete classifications; [they] do[] not prohibit employment decisions based on other factors, such as job performance, erroneous evaluations, personality conflicts,

or even unsound business practices." Rose-Maston, 133 F.3d at 1109.

Evidence that similarly-situated employees were treated differently can be evidence of unlawful discrimination. To show that other employees are similarly situated, a plaintiff is "required to point to individuals who 'have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances.'" Marquez v. Bridgestone/Firestone, Inc., 353 F.3d 1037, 1038 (8th Cir. 2004) (quoting Clark v. Runyon, 218 F.3d 915, 918 (8th Cir. 2000)). "Employees are similarly situated when they are involved in or accused of the same offense and are disciplined in different ways," and the test is a rigorous one. Harvey v. Anheuser-Busch, Inc., 38 F.3d 968, 972 (8th Cir. 1994) (quotation omitted). Offering nothing more than an opinion that other employees were not treated similarly is insufficient to create a genuine issue of fact for trial, and a plaintiff must substantiate her allegations with more than "speculation, conjecture, or fantasy" in order to survive summary judgment. Marquez, 353 F.3d at 1038 (quoting Putman v. Unity Health Sys., 348 F.3d 732, 733-34 (8th Cir. 2003)).

In this case, plaintiff attempts to avoid summary judgment by citing her own participation in safety meetings, and that defendant could have adopted safety policies that would have avoided the July 15, 2005, incident. Further, plaintiff disagrees

14

with many of defendant's business-operation decisions, such as interrupting plaintiff's sleep the night before the July 15, 2005, incident by calling her on the telephone, and continuing to use a truck that was in serious disrepair. Additionally, plaintiff disputes her co-employees' version of the July 15, 2005, events. Finally, plaintiff objects to defendant's conclusion that plaintiff's July 15, 2005, violation was "serious."

Plaintiff's attempts to raise disputes of fact concerning the wisdom of the continued use of the safety procedures that she claims contributed to the occurrence of the incident, defendant's business-operation decisions, the seriousness of the incident, and the credibility of her co-workers does not preclude summary judgment in the absence of evidence that plaintiff's age or gender was a contributing factor in defendant's decision to terminate her. Plaintiff's contentions do little more than quarrel with the soundness of defendant's business judgment in deciding to terminate plaintiff. Plaintiff's focus on debating whether the disciplinary action she received was warranted by the nature of the alleged misconduct does not give rise to an inference of discrimination, particularly as plaintiff fails to dispute much of the conduct for which the discipline was imposed.

Plaintiff also attempts to show that she was treated differently than similarly-situated males and persons under the age of forty. However, although plaintiff asserts that similarly-situated younger and male employees committed similar infractions

15

but were not discharged, she presents little evidence to support such a claim other than her own unsubstantiated or generalized allegations. For example, plaintiff states that co-employee Jinkerson had "numerous incidents," without describing the quantity or nature of those incidents. Further, plaintiff states that "several males" were known by management to be "sleeping on the job." Doc. #31, p. 18. This allegation similarly fails to contain any degree of specificity by which the Court can evaluate defendant's alleged disparate treatment.

Plaintiff also points to the statements of Stark, a co-employee who stated that once, while he was working as a handler, the trailer in which he was working started moving with him still in it. When asked if, to his knowledge, the male driver of that trailer was written up or otherwise reprimanded, Stark testified that the driver was not. However, plaintiff fails to demonstrate that this driver was similarly situated to her, in that she fails to show that any supervisor knew of the incident, or that this incident was the driver's second violation.

Further, plaintiff refers to McCawley, a male who was issued a warning letter for driving away from the dock with two employees still in the back of the truck, but was not terminated. However, plaintiff fails to allege or put forward evidence that this incident was McCawley's second such incident (and, indeed, defendant states that it was his first). Defendant's failure to

16

terminate McCawley for his first such offense is completely consistent with how defendant treated plaintiff.[3]

Finally, plaintiff refers to Anth, whom she alleges has three DWIs, and Kaemmerer, whom she claims had been involved in at least six serious incidents in a three-year period, including getting a speeding ticket while on duty, failure to check and secure his load, tardiness, and getting into an accident. However, plaintiff does not allege when these incidents occurred, who these co-employees' supervisors were at the time of the incidents, the incidents of which these co-employees' supervisors were aware, what discipline was received for each incident, or how the discipline received allegedly fell short. All of these factors are important in determining whether Anth and Kaemmerer were similarly situated to plaintiff.

The Court finds that plaintiff fails to demonstrate that any younger or male employees were similarly situated in terms of the number and severity of plaintiff's safety violations and were treated differently. Further, because a court does not sit as a review board of the fairness of personnel decisions, other than to determine unlawful discriminatory motives, even if the Court were to consider plaintiff's allegations concerning the comparative

_____

[3]Plaintiff refers to McCawley's warning letter as "defendant's covering of their tracks relating to Mike McCauley." Doc. #30, p. 13. Plaintiff states, had she not been disciplined so severely for the July 15, 2005, incident, McCawley would not have received his warning letter. Plaintiff has set forth no evidence to support her conclusion.

treatment of other employees, her discrimination claims are not supported as required by law.  In this case, the record fails to show two plausible, but contradictory, accounts of the essential facts or that the 'genuine issue' in the case is real.  There is simply no evidence on the record that plaintiff's age or gender contributed to her termination.

For the above stated reasons,

**IT IS HEREBY ORDERED** that defendant's motion for summary judgment [Doc. #27] is granted.

Dated this <u>  7th  </u> day of October, 2008.

<u>/s/Donald J. Stohr          </u>
UNITED STATES DISTRICT JUDGE